# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DARREN E. COX, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>CACHE COUNTY, et al.,<br><br>    Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br>Case No. 1:08-cv-124 CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Before the court are Defendants'[1] Motion to Dismiss Plaintiffs'[2] Twentieth Claim for Relief and Defendants' Motion to Dismiss and/or for Summary Judgment of Plaintiffs' Second Claim for Relief. (Dkt Nos. 93, 96). For the reasons discussed below, the court GRANTS Defendants' Motion to Dismiss Plaintiffs' Twentieth Claim for Relief for civil conspiracy and GRANTS Defendants' Motion for Summary Judgment on Plaintiffs' Second Claim for Relief for violation of Fourth Amendment rights. The court, however, also GRANTS Plaintiffs the right, if they choose, to seek leave to amend their Complaint only to add facts that were offered outside the pleadings regarding the alleged conspiracy between Defendants and a third party beekeeper.

---

[1] Cache County, Box Elder County, Does 1-50, Martin James, Elmer James and Solartrac, Inc. d/b/a Slide Ridge Honey.

[2] Darren E. Cox and Cox Honey of Utah, LLC.

## FACTUAL BACKGROUND

Plaintiffs Darren E. Cox ("Mr. Cox") and Cox Honey of Utah, LLC ("Cox Honey") brought this action against Defendants claiming, among other things, that Martin James ("Martin"), who is the county bee inspector for both Cache and Box Elder Counties ("the Counties"), acted to damage Plaintiffs' apiaries and business. Plaintiffs allege twenty claims for relief. The present motions ask the court to dismiss two of the twenty claims. Mr. Cox, a commercial beekeeper, owns and operates Cox Honey. Second Amd'd Compl. 3, ¶ 12 (Dkt No. 61). Martin owns and operates Slide Ridge Honey with his father Elmer James ("Elmer"). *See id.* at 2, ¶¶ 5-6.

Plaintiffs allege that Martin is now a direct competitor of Plaintiffs and was a direct competitor of Plaintiffs prior to his appointment as county bee inspector for Cache County in February 2007 and for Box Elder County in April 2007. *See id.* at 6-7, ¶¶ 26-29. Because Martin is a competitor, Plaintiffs informed the Counties that they objected to allowing him to inspect their apiaries. *See id.* at 11, ¶ 47. Plaintiffs claim that the location of their apiaries and their beekeeping techniques are valuable proprietary information that they have a right to keep secret from their competitors. *See id.* at 4-6, ¶¶ 18-25.

Plaintiffs allege that the Counties agreed that Plaintiffs' apiaries would be inspected only by the Utah Department of Agriculture in order to protect their proprietary information. *See id.* at 11, ¶¶ 46-48. Nevertheless, Plaintiffs were required to disclose the location of their apiaries to the Counties to protect the apiaries from being sprayed by county or private pesticide applicators. *See id.* at 12, ¶ 50. Plaintiffs allege that this information was made available to Martin who is now aware of the location of Plaintiffs' apiaries. *See id.*

Plaintiffs further allege that Martin was observed inspecting their apiaries in May 2007 without notice to Plaintiffs or a warrant, and that there is evidence that Martin had inspected other apiaries belonging to Plaintiffs at later times. *See id.* at 12-13, ¶¶ 51-54. Plaintiffs claim that these warrantless searches were done in violation of their Fourth Amendment rights. *See id.* Plaintiffs also allege that Martin knowingly filed a false police report against Mr. Cox for failing to properly identify his apiaries. *See id.* at 13, ¶¶ 56-59. According to Plaintiffs, Martin has discovered the location of each of their bee yards and has discovered their proprietary beekeeping techniques through his official inspections. *See id.* at 13-14, ¶¶ 60-64. Plaintiffs allege that Martin has used this information to improve his commercial beekeeping business to the unfair detriment of Plaintiffs and other commercial beekeepers in the Counties. *See id.*

Plaintiffs additionally allege that Martin, Elmer and Slide Ridge Honey formulated and implemented a plan to place Slide Ridge Honey's apiaries in close proximity to Plaintiffs' apiaries for the express purpose of damaging Plaintiffs by forcing them out of business. *See id.* at 15-16, ¶¶ 68-75. Plaintiffs further allege that Martin and Elmer discussed this plan with another local beekeeper and invited him to participate in the scheme. *See id.* According to Plaintiffs, putting multiple apiaries in close proximity to each other reduces each apiary's honey production. *See id.* Although not alleged in the Complaint, Plaintiffs have submitted evidence that the third party acted in response to Defendants' invitation.

Plaintiffs seek, among other things, a declaratory judgment that the Utah Bee Inspection Act violates the Utah and United States Constitutions, that Martin's actions violated the Fourth Amendment, that the Counties violated Plaintiffs' rights to procedural and substantive due process, that the Counties and Martin violated Plaintiffs' rights to equal protection, that the Counties' hiring

of Martin as county bee inspector was negligent and a violation of Utah statutory law, and that

Martin, Elmer and Slide Ridge Honey engaged in a civil conspiracy to put Plaintiffs out of business.

*See id.* at 16-57.

The court only addresses two of Plaintiffs' claims for relief here; namely, their Twentieth

Claim for Relief for civil conspiracy and their Second Claim for Relief for violations of Fourth

Amendment rights. Defendants move to dismiss Plaintiffs' Twentieth Claim on the basis that the

intracorporate conspiracy doctrine precludes Defendants' liability for civil conspiracy as a matter

of law. *See* Mot. to Dismiss Twentieth Claim at 3 (Dkt No. 93). Defendants move to dismiss or for

summary judgment of Plaintiffs' Second Claim against Martin for violation of their Fourth

Amendment rights on the basis that as county bee inspector, he is entitled to qualified immunity.

*See* Mot. to Dismiss Second Claim at 2-3 (Dkt No. 96).

## ANALYSIS

## I.     STANDARD OF REVIEW

Defendants move to dismiss both the Twentieth and Second Claims for Relief under Rules

12(b)(6) and 12©. The court reviews a Rule 12© motion under the same standard that governs a

Rule 12(b)(6) motion. *See Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). When evaluating

a motion to dismiss under Rule 12(b)(6), the court "must accept all the well-pleaded allegations of

the complaint as true and must construe them in the light most favorable to the plaintiff." *David v.*

*City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996). The court need not, however,

consider allegations which are conclusory, or that "do not allege the factual basis" for the claim.

*Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110

(10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient

to state a claim on which relief can be based."). Moreover, the court is not bound by a complaint's legal conclusions, deductions, and opinions couched as facts. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Although all reasonable inferences must be drawn in the nonmovant's favor, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this standard, a claim need not be probable, but there must be facts showing more than a "sheer possibility" of wrongdoing. *Id.*

When a motion to dismiss under Rule 12(b)(6) presents matters outside the pleadings, the court has discretion to exclude or recognize such matters. *See e.g.,* Fed. R. Civ. P. 12(d) (2012); *Fonte v. Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988) ("[T]he court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material."); *Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980). If the court does not expressly exclude matters outside the pleadings from its consideration of such a motion, the motion must be treated as one for summary judgment and all parties "must be given a reasonable opportunity to present the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004).

Because Plaintiffs have presented facts and evidence outside the pleadings in opposition to Defendants' motions to dismiss, the court must determine whether to exclude such extraneous material from consideration or to convert the motions into motions for summary judgment.

## II.  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' TWENTIETH CLAIM FOR RELIEF FOR CIVIL CONSPIRACY BASED ON THE INTRACORPORATE CONSPIRACY DOCTRINE

Defendants move to dismiss Plaintiffs' Twentieth Claim for Relief because, as pled, it does not allege the elements of a conspiracy. Because the court finds that it may resolve Defendants' Motion to Dismiss Plaintiffs' Twentieth Claim for Relief on the pleadings alone, the court will disregard all extraneous matters presented in the present motion and will treat it as a Rule 12(b)(6) motion to dismiss. Defendants Martin, Elmer and Slide Ridge Honey argue that Plaintiffs' civil conspiracy claim must fail, as a matter of law, because Plaintiffs' Second Amended Complaint alleges that Defendants Martin and Elmer are both owners and operators of Slide Ridge Honey and are thus incapable of conspiring under the intracorporate conspiracy doctrine.

Under Utah law, civil conspiracy requires proof of, among other things, "a combination of two or more persons." *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 29; 201 P.3d 944, 954-955. The intracorporate conspiracy doctrine holds that "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (citation omitted); *see also Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 52 (10th Cir. 1963) (stating that under Colorado law, "a corporation and its employee do not constitute the 'two or more persons' required for a civil conspiracy."). "Under the doctrine, a corporation cannot conspire with its

employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Id.*

Plaintiffs argue that the intracorporate conspiracy doctrine does not bar their conspiracy claim for several reasons. First, Plaintiffs argue that the court already concluded that the intracorporate conspiracy doctrine does not apply to Plaintiffs' conspiracy claim when it granted Plaintiffs' Motion to Amend their complaint to add the claim in the face of Defendants' argument that such an amendment would be futile because the claim would fail as a matter of law. Second, Plaintiffs claim that Utah has never recognized the intracorporate conspiracy doctrine and that Defendants have provided no authority to suggest that it would. Third, Plaintiffs argue that the intracorporate conspiracy doctrine is not applicable when a corporate agent has a personal stake in the wrongful conduct. Finally, Plaintiffs assert that the intracorporate conspiracy doctrine is inapplicable in this case because Plaintiffs specifically allege that the conspiracy extended beyond the James and Slide Ridge Honey to the involvement of a third party, "another local beekeeper."

### A.    Motion to Amend Complaint

Plaintiffs' Motion to Amend the Complaint to add the conspiracy claim was granted by Magistrate Judge Samuel Alba on November 19, 2010. In opposition to the motion, Defendants argued that such an amendment would be futile because the claim would be invalid as a matter of law in light of the intracorporate conspiracy doctrine. Judge Alba granted the Motion to Amend after considering the briefs and holding oral arguments. No mention of the intracorporate conspiracy doctrine was made in Judge Alba's Order dated November 19, 2010 allowing the amendment.

Judge Alba's granting of Plaintiffs' Motion to Amend does not require this court to conclude that the intracorporate conspiracy doctrine is inapplicable in this case. Judge Alba's Order did not

fully address the merits of Plaintiffs' conspiracy claim and the federal rules encourage a liberal approach to allowing amendments to pleadings.

**B.      Utah Law**

Defendants concede that Utah courts have never explicitly recognized the intracorporate conspiracy doctrine. Defendants claim, however, that the intracorporate conspiracy doctrine has been widely accepted among various state and federal jurisdictions and that there is no reason to think Utah would reject the doctrine. On the other hand, Plaintiffs argue that there is substantial evidence that Utah would not adopt the intracorporate conspiracy doctrine. To support this position, Plaintiffs argue that the United States Supreme Court recently abrogated the intracorporate conspiracy doctrine in an antitrust context in *American Needle v. Nat'l Football League*, 130 S. Ct. 2201, 2211 (2010).

In *American Needle*, the Court held that the NFL, the NFLP, and individual NFL teams could engage in concerted action which could lead to liability under Section 1 of the Sherman Act. The NFL defendants in that case argued that they could not be liable under Section 1 because they were a single economic entity that could not engage in concerted action as a matter of law. The Court rejected this argument and held that each NFL team was a separate economic entity that had economic interests that were different from other NFL teams. *See id.* at 2212-2213. For this reason, the Court found that the NFL, the NFLP, and the individual teams could engage in concerted action with respect to marketing intellectual property in violation of the Sherman Act.

While discussing the concept of concerted action, the Court stated that the "intraenterprise conspiracy doctrine" was "now-defunct." *Id.* at 2210. It is not clear whether Plaintiffs are relying on this language to support their assertion that the Court has abrogated the intracorporate conspiracy doctrine in all other contexts. It is clear, however, that the "intraenterprise conspiracy doctrine"

referred to by the Court in *American Needle* is a different concept than the intracorporate conspiracy doctrine Defendants rely upon in their Motion to Dismiss the Twentieth Claim.

The Court was addressing an older antitrust doctrine that held that "cooperation between legally separate entities [are] necessarily covered by § 1." *Id.* (The Court rejected the intraenterprise conspiracy doctrine because it held that in certain cases, cooperation between separate legal entities was not concerted action under Section 1 of the Sherman Act. For example, farmers who owned three separate agricultural cooperatives could not be held liable for coordinating the actions of all three because to hold otherwise would "impose grave legal consequences upon organizational distinctions that are of *de minimus* meaning and effect." Likewise, though separate legal entities, a parent corporation and its subsidiary cannot be held liable for concerted action under Section 1 because "they are controlled by a single center of decisionmaking.") (internal citations omitted).

The Court was not rejecting the intracorporate conspiracy doctrine when it noted that the intraenterprise conspiracy doctrine of antitrust law was defunct. In fact, although *American Needle* is an antitrust case rather than a civil conspiracy case, the language of the decision actually supports Defendants' contention that an intracorporate conspiracy cannot exist as a matter of law. *See, e.g., id.* at 2212 ("[W]hile the president and a vice president of a firm could (and regularly do) act in combination, their joint action generally is not the sort of 'combination' that § 1 is intended to cover. Such agreements might be described as really unilateral behavior flowing from decisions of a single enterprise.") (internal quotation marks and citation omitted).

Both Alabama and South Carolina, however, have rejected intracorporate immunity when a conspiracy is alleged as existing between two or more agents or employees of a single corporation, even when the employees are acting within the scope of their employment. *See Lee v. Chesterfield Gen. Hosp., Inc.*, 344 S.E.2d 379, 383 (S.C. App. 1986) ("[T]he agents of a corporation are legally

capable, as individuals, of conspiracy among themselves or with third parties.") (citation omitted); *Lawler Mobile Homes, Inc. v. Tarver*, 492 So.2d 297, 306 (Ala. 1986) ("[W]e have recognized that a corporation may be liable for damage to a third person resulting from a conspiracy where two or more of its agents participated in the conspiracy."). But most other states that have addressed the issue do apply intracorporate immunity where two or more employees of a single corporation are alleged to have conspired. *See* Robin Miller, Annotation, *Construction and Application of "Intracorporate Conspiracy Doctrine" as Applied to Corporation and Its Employees - State Cases*, 2 A.L.R. 6th 387 (2005) (collecting cases from Connecticut, District of Columbia, Florida, Massachusetts, Nebraska, Texas, Virginia and Wisconsin that have applied intracorporate immunity where two employees of the same corporation were alleged to have conspired while acting within the scope of their employment).

The few states that have rejected the doctrine have not addressed the issue in more than 25 years. Most states that have addressed the issue since the mid-1980s have adopted the doctrine. The parties have not suggested any particular reason why Utah would part ways from the majority of jurisdictions with respect to the intracorporate conspiracy doctrine. Accordingly, the court finds that it governs this case.

### C. Independent Personal Stake Exception

Plaintiffs next argue that the intracorporate conspiracy doctrine should not be applied in this case because the conduct of Martin and Elmer was motivated by their own personal interests rather than the interests of Slide Ridge Honey.

Where an officer or employee of a corporation has an independent personal stake in achieving the corporation's illegal objectives, the intracorporate conspiracy doctrine does not apply. *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1127 (10th Cir. 1994) (recognizing an exception

to the intracorporate conspiracy doctrine "where an officer or agent has an independent personal stake in achieving the corporation's illegal objective.") (internal quotation marks and citation omitted); *Harp v. King,* 835 A.2d 953 (Conn. 2003) ("For a claim of intracorporate conspiracy to be actionable, the complaint must allege that corporate officials, employees, or other agents acted outside the scope of their employment and engaged in conspiratorial conduct to further their own personal purposes and not those of the corporation."); *Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So.2d 963, 966 (Fla. App. 2002) (recognizing exception where "the agent has a personal stake in the activities separate from the principal's interest."); *Margae, Inc. v. Clear Link Technologies, LLC*, 2208 U.S. Dist. LEXIS 105451 (D. Utah 2008).

Plaintiffs claim that Martin and Elmer have an independent personal stake in ruining Plaintiffs' business. According to Plaintiffs, Martin and Elmer have a personal animosity toward Mr. Cox that is motivating their conduct, which is independent of any business interest belonging to Slide Ridge Honey. The independent personal stake exception does not mean that the intracorporate conspiracy doctrine is inapplicable anytime an employee would benefit from illegal action taken on behalf of a corporation. Instead, it only applies when "the conspirator gained a direct personal benefit from the conspiracy, a benefit wholly separable from the more general and indirect corporate benefit always present under the circumstances surrounding virtually any alleged corporate conspiracy." *Selman v. Am. Sports Underwriters, Inc.*, 697 F.Supp. 225, 239 (W.D. Va. 1988). Similarly, the fact that an employee was acting in a "mean, vicious, [or] vindictive manner," does not make that employee liable for conspiracy when their conduct is not outside the scope of their employment. *See Crouch v. Trinque*, 262 S.W.3d 417, 427 (Tex. App. 2008).

Although Plaintiffs make the conclusory allegation that Defendants had no legitimate business purpose for placing Slide Ridge Honey apiaries in close proximity to Plaintiffs' apiaries,

they do not allege any facts to support the claim that Martin and Elmer had a personal stake in taking the actions they have taken independent of Slide Ridge Honey. Plaintiffs allege that Defendants placed their apiaries near Plaintiffs' apiaries to drive Plaintiffs out of business. They also allege that Defendants made false and disparaging statements about Plaintiffs in order to hurt Plaintiffs' business. The possibility that there may be animosity between Plaintiffs and Defendants does not mean, however, that the personal stakes that Martin and Elmer have in damaging Plaintiffs' business are separate and independent from the business interests of Slide Ridge Honey.

Therefore, Plaintiffs have not alleged sufficient facts to support their argument that Martin and Elmer's alleged conspiratorial agreement to interfere with Plaintiffs' business was motivated by personal stakes independent from the business interests of Slide Ridge Honey. For these reasons, the court grants Defendants' Motion to Dismiss Plaintiffs' Twentieth Claim for Relief to the extent it is based on an alleged conspiracy between Martin, Elmer and Slide Ridge Honey. As addressed in the next section, this ruling does not preclude Plaintiffs from attempting to prove a conspiracy with a third party.

### D. Conspiracy with a Third Party

With respect to conspiracy, Plaintiffs allege that Defendants Martin, Elmer and Slide Ridge Honey "formulated and implemented a plan to place Slide Ridge Honey's apiaries in close proximity to Mr. Cox's apiaries, with the express purpose of hurting Mr. Cox's business and driving him out of business." Second Amd'd Compl. at 15, ¶ 70 (Dkt. No. 61). The only allegations in the Complaint regarding participation in an alleged plan to place apiaries in close proximity to Plaintiffs' apiaries are Plaintiffs' allegation that "Martin and Elmer have discussed their plan with another local beekeeper and invited him to participate in their wrongdoing." *Id.* at 16, ¶ 71.

To prove conspiracy in Utah, a plaintiff must show "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Pohl, Inc. of Am.*, 2008 UT 89, ¶ 29 (citation omitted).

A simple allegation that one party approached another about the possibility of participating in a conspiracy without more detail would not be sufficient to state a claim for civil conspiracy under Utah law. Plaintiffs' Second Amended Complaint does not allege a combination between Slide Ridge Honey and "another local beekeeper." Furthermore, Plaintiffs do not allege that there was a meeting of the minds between Slide Ridge Honey and "another local beekeeper."

On the allegations of the Complaint alone, the conduct of the other local beekeeper would not be sufficient to support a conspiracy claim as there were only discussions of the idea and an invitation, but no facts supporting that an agreement was reached. In opposition to this Motion, however, Plaintiffs have submitted evidence outside the pleadings that the third party, Mr. Neuenschwander, acted upon the invitation by locating several of his hives in close proximity to the Plaintiffs' hives. These additional facts, if believed by the fact finder, would be sufficient to allow an inference that the Defendants and Mr. Neuenschwander agreed and acted in furtherance of the conspiracy.

Because these facts are offered outside the pleadings, the court grants Defendants' Motion to Dismiss the Twentieth Claim. The court, however, will allow Plaintiffs to seek leave to amend their Complaint to include these outside facts.

**III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' SECOND CLAIM FOR RELIEF FOR VIOLATIONS OF THE FOURTH AMENDMENT BASED ON QUALIFIED IMMUNITY**

Defendants move to dismiss Plaintiffs' Second Claim claiming qualified immunity.  They assert that Martin, as the county bee inspector, was acting as a public official and that he is therefore entitled to qualified immunity in this case because he was acting within the scope of his official duties when he inspected Plaintiffs' apiaries.  Although Defendants' Motion to Dismiss was filed under Rule 12(b)(6), both Plaintiffs and Defendants, as they did on the Motion to Dismiss the Twentieth Claim,  have presented the court with "matters outside the pleadings" and Defendants urge the court to consider this outside evidence in ruling on its motion.  Because both parties have engaged in discovery and have had opportunity to present the court with extrinsic evidence in support of their positions regarding this motion, the court deems it proper to treat this motion as a motion for summary judgment under Rule 56.

When qualified immunity is raised as a defense in a motion for summary judgment, the plaintiff, to overcome the defense, has the burden to show that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established.  *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009).  In determining whether a plaintiff has met its burden of showing that a defendant violated a clearly established constitutional right, the facts should be construed in the light most favorable to the plaintiff as the nonmoving party.  *Id.*  Because a summary judgment motion is heard beyond the pleading stage, however, a plaintiff's version of the facts must find support in the record.  *Id.*  "[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."  *Id.* (citation omitted).

## A. Relevant Facts

According to Plaintiffs' Second Amended Complaint, Martin was observed inspecting one of Plaintiffs' apiaries in Box Elder County on or about May 23, 2007. *See* Second Amd'd Compl. at 12, ¶ 51 (Dkt No. 61). Plaintiffs allege that Martin conducted the inspection without a warrant and failed to notify Plaintiffs that he was conducting an inspection. *See id.* at ¶ 52. Plaintiffs additionally allege that they have "observed numerous other apiaries since that time" in both of the Counties that "show signs of having been inspected" by Martin. Plaintiffs state that these signs include "apiaries with unclosed lids or that have indications of disturbance through having the wax seal that typically forms on an apiary's lid broken" which breaking does not occur unless the apiary has been intentionally opened. *Id.* at ¶ 53. Plaintiffs plead no other facts to support the conclusory allegation that Martin inspected the apiaries.

Plaintiffs assert that these inspections, upon their information and belief, were performed by Martin even though he was prohibited from inspecting Plaintiffs' apiaries and that the inspections were "conducted without warrants" and while Martin was "acting under color of state law in his capacity as the County Bee Inspector." *Id.* at 13, ¶ 54-55. Plaintiffs thus assert that these alleged inspections violated their "Fourth Amendment right to be free from unlawful searches and seizures." *Id.*

Specifically, the purported unlawful search involved landowner Milton Williams ("Mr. Williams") and his property upon which Plaintiffs had placed their beehives with his permission. *See* Def's Reply Memo. in Supp. of Def's Mot. to Dismiss Second Claim at 4 (Dkt No. 118). The hives were outside on Mr. Williams' land and located at the back of his property. *See id.* According to Defendants, Martin had been informed that another local farmer was going to spray pesticides which would kill bees. When Martin drove by Mr. Williams' land, he noticed the beehives which

were visible from the road. *See id.* at 5. When he saw the hives, he stopped and approached them to determine the name of the owner and Defendants state that Martin's intention was to warn the hive owner about the upcoming pesticide application because it could harm the bees in the hive. *See id.*

Mr. Williams said he did not have a problem with Martin, as county bee inspector, being on his land and, in fact, Mr. Williams testified that had Martin asked for Mr. Williams' permission to look at the hives, Mr. Williams would have said yes. *See id.* Defendants state that Mr. Williams even called Mr. Cox about the incident and that Mr. Williams told Mr. Cox that Martin had been there looking at Plaintiffs' beehives. *See id.* According to Defendants, Mr. Cox told Mr. Williams that Martin had a right to be there as county bee inspector, that he could not do anything about it then anyway, and that later Mr. Cox admitted to Mr. Williams that Martin had been on Mr. Williams' land because of the pesticide spraying and that he was only trying to find out who owned the hives so he could warn the owner. *See id.* at 6. Plaintiffs present no contrary evidence.

## B. Legal Standard

Defendants' Motion for Summary Judgment on Plaintiffs' Second Claim for Relief for violations of the Fourth Amendment is based on Defendants' assertion that Martin is entitled to qualified immunity because he was acting within the scope of his official duties as county bee inspector when he inspected Defendants' apiaries. In analyzing this question,

> [s]ummary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Material facts are those that might affect the outcome of the suit under the governing law. Genuine disputes are those that are supported by admissible evidence sufficient for a reasonable trier of fact to find in favor of the nonmoving party. In considering whether there is a triable factual dispute, the court views all evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party.

*Whipple v. State*, No. 2:10-cv-00811-DAK, 2011 U.S. Dist. LEXIS 109630, at \*71-72 (D. Utah Aug. 24, 2011) (citations and quotation marks omitted).

In this process, "the movant must show the absence of a genuine issue of material fact," but the movant "need not negate the nonmovant's claim." *Id.*

> Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof. The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is "genuine"; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant.

*Id.* (citations and quotation marks omitted).

In considering Defendants' qualified immunity defense, the court must evaluate whether the conduct of government officials violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (internal citations and quotation marks omitted). This is because qualified immunity "protects defendants not only from liability but also from suit." *Id.* As a result, "the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* Thus, "when a defendant raises a qualified immunity defense in a motion for summary judgment, the burden shifts to the plaintiff to meet a strict two–part test" and "[t]he plaintiff's burden is heavy." *Id.*

> First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue. If the plaintiff meets this two-part test, then the burden shifts back to the defendant, who then bears the summary judgment motion movant's traditional burden: showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. The dispositive question is whether an objectively reasonable official would understand that the alleged improper actions were unlawful.

*Id.* at 73-75 (citations and quotation marks omitted).

Having carefully examined the pleadings and supporting materials, the court concludes that Plaintiffs have not met their burden to survive Martin's claim of qualified immunity. As discussed below, Plaintiffs have not presented evidence sufficient to meet the elements of the claims they have asserted. Thus, because Plaintiffs have not presented the court with evidence from which a jury could find that Defendants' actions violated a statutory or constitutional right that was clearly established at the time of the violation, it follows that an objectively reasonable official would not have understood that the alleged improper actions were unlawful. Plaintiffs do not overcome Martin's assertion of qualified immunity.

### C. Violation of a Constitutional or Statutory Right

Plaintiffs claim that Martin violated their Fourth Amendment right to be free from unreasonable searches when he inspected their apiaries without a warrant. The only facts alleged to support a claimed search relate to the incident at the Williams' property. The Fourth Amendment protects people from having their "persons, houses, papers, and effects" unreasonably searched. The Supreme Court has interpreted the Fourth Amendment as creating a presumptive warrant requirement for searches and seizures. *See Katz v. United States*, 389 U.S. 347, 356 (1967) ("[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment.").

The Court has also interpreted the Fourth Amendment, however, to be limited in its scope. For example, in *Hester v. United States*, 265 U.S. 57, 59 (1924), the Court held that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields." *See also Oliver v. United States*, 466 U.S. 170, 178 (1984) ("[A]n individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home."). The presence of fences and "No

Trespassing" signs on the perimeter of an open field does not make a search of an open field a Fourth Amendment search. *See Oliver*, 466 U.S. at 183-184 ("[I]n the case of open fields, the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment."). Neither does the fact that a searched area is highly secluded and not observable from a point of public access create a reasonable expectation of privacy in an open field. *See, e.g., id.* at 174 ("[T]he field itself is highly secluded: it is bounded on all sides by woods, fences, and embankments and cannot be seen from any point of public access.").

Although it is well settled that a search of an open field is not a search that is protected by the Fourth Amendment, even when the search constitutes a common law trespass, the Supreme Court has not decided whether a search inside of containers in an open field would be considered a Fourth Amendment search. The Sixth Circuit, however, has held that a search of bee apiaries in an open field would be protected by the Fourth Amendment. *See Allinder v. Ohio*, 808 F.3d 1180, 1184-1187 (6th Cir. 1987). In *Allinder*, the Sixth Circuit held that while a visual inspection of bee apiaries in an open field may not violate the Fourth Amendment, when an inspection involves "physical intrusion, manipulation and dismantling of the hives," it is a search that is protected by the Fourth Amendment.

*Allinder* is persuasive. In *Katz*, Justice Harlan articulated a principle that has since become the touchstone of Fourth Amendment search law, which is that the Fourth Amendment protects areas where people have a "reasonable expectation of privacy." 389 U.S. at 360 (Harlan, J., concurring). It is reasonable to infer that a beekeeper has a reasonable expectation of privacy in his apiaries. Apiaries are commercial property, and a search of the interior could reveal important commercial information such as the health of the bees, certain techniques for honey production, and the number

of bees in the hive. It would not be unreasonable for a commercial beekeeper to assume that this information is proprietary and not available to public view.

But Plaintiffs have not submitted evidence that would allow a jury to conclude that Martin did, in fact, manipulate Plaintiffs' hives, even after construing the evidence in the light best for Plaintiffs. In fact, Plaintiffs cite no evidence to support their allegation that Martin manipulated any of Plaintiffs' apiaries, or that the apiaries were manipulated without consent at all. At most, the evidence submitted by Plaintiffs supports the conclusion that Martin did a visual inspection of Plaintiffs' apiaries. Indeed, Martin concedes that he did such a visual inspection. However, a visual inspection in an open field is clearly not a Fourth Amendment search under *Oliver*.

Therefore, the court finds that, in light of Plaintiffs' lack of evidentiary support for their claim, there was no constitutional violation in Martin's visual inspection of Plaintiffs' apiaries. The court finds that the evidence is insufficient to conclude that Martin's visual inspection implicates the Fourth Amendment because the Fourth Amendment's purview does not extend to visual inspections of a person's items, like Plaintiffs' apiaries, which are sitting in an open field.

### D. Clearly Established Constitutional or Statutory Right at the Time of the Conduct at Issue

Even if Plaintiffs had shown that Martin committed a Fourth Amendment violation by inspecting Plaintiffs' apiaries without a warrant through "physical intrusion, manipulation and dismantling of the hives," *Allinder*, 808 F.2d at 1186, Plaintiffs must still show that such a right was clearly established. The Tenth Circuit has indicated that for a law to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City*

*and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (holding that a single unpublished decision from the District of Colorado did not clearly establish a constitutional violation).

Plaintiffs cite *Allinder* to support their claim that warrantless inspections of apiaries are clear violations of the Fourth Amendment. One Sixth Circuit case from over 25 years ago (1987), however, does not constitute "the clearly established weight of authority from other courts." Plaintiffs do not cite and the court is not aware of, nor has it found, any other case law to support their claim that the Fourth Amendment requires a warrant to inspect bee apiaries in open fields.

Nevertheless, Plaintiffs are not required to point to case law that is directly on point to show that Martin's conduct was a violation of a clearly established constitutional right. It is enough for Plaintiffs to show that "a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct at issue." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1290 (10th Cir. 2009) (internal quotation marks and citation omitted). But, again, Plaintiffs have not cited to any additional case law to show that a reasonable expectation of privacy exists in an unattended and unlocked container in an open field, particularly where they have provided insufficient evidence from which a reasonable fact finder could conclude that any physical intrusion, manipulation and/or dismantling of the hives has occurred. Accordingly, the court grants Defendants' Motion for Summary Judgment on Plaintiffs' Second Claim.

## ORDER

For the reasons stated above, the court hereby GRANTS Defendants' Motion to Dismiss Plaintiffs' Twentieth Claim for Relief for civil conspiracy and GRANTS Defendants' Motion for Summary Judgment of Plaintiffs' Second Claim for Relief for violation of Fourth Amendment rights. (Dkt Nos. 93, 96). The court, however, also GRANTS Plaintiffs the right to seek leave to amend their Complaint only to add facts that were offered outside the pleadings regarding the

alleged conspiracy between Defendants and a third party beekeeper. Plaintiffs shall have until October 10, 2013 to file their amended Complaint if they choose to do so. Defendants may, if they choose, oppose such motion.

DATED this 11th day of September, 2013.

BY THE COURT:

Clark Waddoups
United States District Judge