# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DARREN E. COX, et al.,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>CACHE COUNTY, et al.,<br><br>　　　　　　Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br>Case No. 1:08-cv-124 CW<br><br>Judge Clark Waddoups |

## <u>INTRODUCTION</u>

Two motions are before the court. The first is the motion of Plaintiffs Darren Cox ("Darren") and Cox Honey of Utah, LLC ("Cox Honey") for partial summary judgment (Dkt. No. 136) on the First Claim for Relief making constitutional challenges against the Utah Bee Inspection Act (the "Inspection Act" or "Act"). Plaintiffs assert that the Inspection Act is unconstitutionally vague and void and seek injunctive and declaratory relief, damages and attorneys' fees.

The second is the motion of Defendants Cache and Box Elder Counties (the "Counties"), Martin James ("Martin"), Elmer James ("Elmer"), and Solartrac, Inc., dba Slide Ridge Honey ("Slide Ridge Honey") for judgment on the pleadings (Dkt. No. 137) on the Fifth Claim for Relief alleging a "class-of-one" Equal Protection violation. Defendants seek dismissal of the Fifth Claim, with prejudice.

The court heard oral argument on both parties' motions on March 6, 2014 and took the motions under advisement. After carefully reviewing the parties' filings and relevant legal

authorities, the court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Partial Summary Judgment and GRANTS Defendants' Motion for Judgment on the Pleadings.

## **FACTUAL BACKGROUND**

The motions at issue arise out of an action that Plaintiffs Darren Cox and Cox Honey have brought against Defendants following Martin James' appointment as county bee inspector for both Cache and Box Elder Counties. Darren, a commercial beekeeper, owns and operates Cox Honey. Second Am. Compl. 3, ¶ 12 (Dkt No. 61). Martin, also a commercial beekeeper, owns and operates Slide Ridge Honey with his father Elmer. *See id.* at 2, ¶¶ 5-6. The essence of Plaintiffs' claims is that the Inspection Act does not adequately protect the interests of commercial beekeepers and is unconstitutional and void for vagueness, that Martin has improperly inspected Plaintiffs' hives or apiaries, that Martin and his father Elmer, and their company Slide Ridge Honey, have misappropriated Plaintiffs' commercial and proprietary beekeeping techniques, and that Elmer and Slide Ridge Honey have otherwise injured Plaintiffs. *See* Def.'s Mot. for J. on Plead., 2 (Dkt. No. 136).

Plaintiffs allege that Martin is a direct competitor. *See Second Am. Comp.* at 6-7, ¶¶ 26-29 (Dkt. No. 61). Because Martin is a competitor, they informed the Counties that they objected to allowing Martin to inspect their apiaries. *See id.* at 11, ¶ 47. Plaintiffs assert that the location of their apiaries and their beekeeping techniques are valuable proprietary information that they have a right to keep secret from their competitors. *See id.* at 4-6, ¶¶ 18-25.

Plaintiffs further allege that the Counties and Plaintiffs agreed that Plaintiffs' apiaries would be inspected by the Utah Department of Agriculture rather than by Martin to allow Plaintiffs to protect their proprietary information. *See id.* at 11, ¶¶ 46-48. Plaintiffs were

nevertheless required to provide information to the Counties about the location of their apiaries to protect the apiaries from being sprayed by county or private pesticide applicators. *See id.* at 12, ¶ 50. Plaintiffs allege that this information was made available to Martin who is now aware of the locations of Plaintiffs' apiaries. *See id.*

Plaintiffs further allege that Martin was observed inspecting one of their apiaries in Box Elder County located on Milton Williams' land in May 2007 without any notice to Plaintiffs or a warrant, and that there is evidence that Martin inspected other apiaries belonging to Plaintiffs at later times. *See id.* at 12-13, ¶¶ 51-54. Martin responds that he was checking the hive on Williams' farm to see who it belonged to so that he could warn the owner about impending pesticide spraying in the area and to help ensure that the bees were unharmed. He claims he was carrying out his responsibilities as bee inspector. Martin denies that he opened or manipulated the hive. Plaintiffs argue, however, that these were warrantless searches done in violation of their Fourth Amendment rights. *See id.* Plaintiffs also allege that Martin filed a knowingly false police report against Darren for failing to properly identify his apiaries. *See id.* at 13, ¶¶ 56-59.

According to Plaintiffs, Martin has discovered the location of each of their bee yards and has discovered their proprietary beekeeping techniques through his official inspections. *See id.* at 13-14, ¶¶ 60-64. Plaintiffs allege that Martin has used this information to improve his commercial beekeeping business to the unfair detriment of Plaintiffs and other commercial beekeepers in the Counties. *See id.*

Plaintiffs additionally allege that Martin, Elmer and Slide Ridge Honey formulated and implemented a plan to place Slide Ridge Honey's apiaries in close proximity to Plaintiffs' apiaries with the express purpose of damaging Plaintiffs' business. *See id.* at 15-16, ¶¶ 68-75.

According to Plaintiffs, putting multiple apiaries in close proximity to each other violates beekeeping industry standards because it reduces each apiary's honey production. *See id.* Plaintiffs allege that Martin and Elmer discussed this plan with another local beekeeper who was invited to participate in the scheme. *See id.* Plaintiffs seek a declaratory judgment that the Inspection Act violates the Utah and United States Constitutions, that Martin's actions violated the Fourth Amendment, and that the Counties and Martin violated Plaintiffs' rights to equal protection. *See id.* at 16-57.

## ANALYSIS

### I. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

#### A. Plaintiffs' Constitutional Arguments Challenging the Inspection Act

Plaintiffs assert that Darren has "a reasonable expectation of privacy in his apiaries, which are commercial and personal property, subject to the protections of the Fourth Amendment" prohibiting unreasonable searches and seizures by government officials of private property. *Id.* at 17, ¶¶ 78-79. Plaintiffs allege that the Inspection Act "unconstitutionally authorizes warrantless searches and seizures of [Darren's] apiaries in violation of the Fourth Amendment." *Id.* at 17, ¶ 79. Plaintiffs further claim:

> The [Inspection Act] violates the Fourth Amendment because it provides the county bee inspector with nearly unfettered discretion and is ripe for potential abuse because it fails to provide for inspection by a neutral officer, fails to require assurances that an inspection is reasonable under the U.S. Constitution, and fails to ensure that the inspection is performed pursuant to an administrative plan containing specific neutral criteria.

> The [Inspection Act] is also fatally defective under the Fourth Amendment because it fails to reasonably notify a beekeeper or property owner when an inspection is due, fails to allow a beekeeper or property owner to consent to inspection or be present when an inspection is performed, and allows apiaries to be disturbed and potentially damaged as a result of the unannounced inspection.

4

*Id.* at 17, ¶¶ 80-81.

Plaintiffs also claim that the Inspection Act is "also constitutionally defective under the Due Process Clause of the Fourteenth Amendment because it is unconstitutionally vague" and "it fails to provide adequate due process protection." *Id.* at 17, ¶ 82. Plaintiffs assert that Darren has a property interest in his apiaries and also in his proprietary beekeeping techniques which are both subject to due process protection. *See id.* at 18, ¶ 84. Plaintiffs submit that the Inspection Act is unconstitutionally vague and void because "it presents a substantial risk of selective, arbitrary, and discriminatory enforcement by allowing the county bee inspector nearly unfettered discretion in choosing any of three remedies for diseased bees – treatment, seizure, or destruction – without providing any guidelines for the exercise of that discretion." *Id.* at 18, ¶ 85.

Plaintiffs further allege:

> The [Inspection Act] is also unconstitutional because it fails to provide [Darren] and others similarly situated with constitutionally required pre-deprivation protections, including but not limited to, (1) timely and adequate notice detailing the reasons for the proposed course of treatment of the owner's apiaries; (2) an effective opportunity to defend by confronting and cross-examining adverse witnesses, examining the evidence supporting the county bee inspector's decision, and by presenting his own arguments and evidence for why a different course of action should be pursued; (3) an opportunity to be represented by counsel; (4) a decision that rests solely on the evidence deduced at the hearing; or (5) a statement by the decisionmaker explaining his decision and the evidence relied upon.

*Id.* at 18, ¶ 87.

Plaintiffs plead that, as a beekeeper subject to the Inspection Act, Darren has "a direct and substantial interest in ensuring that he is not subjected to enforcement now or in the future of a statute which would subject [him] to unreasonable searches and seizures and deprive [him] of his property without due process of law." *Id.* at 19, ¶ 91. Plaintiffs complain that the Inspection

Act has injured Darren because "[he] has already been subject to unlawful searches in violation of his constitutional rights" and "is constantly threatened with further enforcement of an unconstitutional statute and loss of his property rights without due process under the current statutory framework." *Id.* at 19, ¶ 92. Plaintiffs also claim that the Inspection Act has injured Darren because "it prevents [him] from selling, bartering, giving away, or moving any bees, colonies, or appliances that are diseased or have been exposed to disease without the county bee inspector's consent." *Id.* at 19, ¶ 93. Thus, Plaintiffs assert that Darren's injuries "will be redressed by a favorable decision holding that the [Inspection Act] violates the Fourth Amendment" and "the due process requirements of the Fourteenth Amendment." *Id.* at 19, ¶ 95.

### B.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000).

### C.  Discussion

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

A government action constitutes a search that triggers the Fourth Amendment safeguards "when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 842 (10th Cir. 2005) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). "Except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Id.* (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528-29 (1967)). "The Supreme Court has expressly held that administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." *Id.* (quoting *See v. Seattle*, 387 U.S. 541, 545 (1967)). Warrants are "a necessary and a tolerable limitation on the right to enter upon and inspect commercial premises." *Seattle*, 387 U.S. at 544. "The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest." *Camara*, 387 U.S. at 539.

The Fourteenth Amendment's Due Process clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Gonzales v. Carhart*, 550 U.S. 124, 148-49 (2007). "Where the legislature fails to provide . . . minimal guidelines [to govern law enforcement]," a statute "may permit a standardless sweep that allows policemen, prosecutors, [and county bee inspectors in this instance] to pursue their personal predilections." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

The requirement that government articulate its aims with a reasonable degree of clarity ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values, reduces the danger of caprice and discrimination in the administration of the laws, enables individuals to conform their conduct to the requirements of law, and permits meaningful judicial review.

*Roberts v. United States Jaycees*, 468 U.S. 609, 629 (1984).

"A constitutional challenge to a statute presents a question of law, which [the court] review[s] for correctness." *State v. Lopes*, 1999 UT 24, P6 (Utah 1999) (quoting *State v. Mohi*, 901 P.2d 991, 995 (Utah 1995)). "When addressing such a challenge, [the] court presumes that the statute is valid, and [it] resolve[s] any reasonable doubts in favor of constitutionality." *Id.*; *see also Society of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 920 (Utah 1993); *Mountain States Tel. & Tel. Co. v. Garfield County*, 811 P.2d 184, 187 (Utah 1991). "The general rule is 'that statutes, where possible, are to be construed so as to sustain their constitutionality.'" *Lopes*, 1999 UT 24 at P18 (quoting *Celebrity Club Inc. v. Utah Liquor Control Comm'n*, 657 P.2d 1293, 1299 (Utah 1982)). "This basic rule applies to criminal and civil statutes equally." *Id.*

It is not the role of federal courts in the constitutional framework of checks and balances to "rewrite a state law to conform it to constitutional requirements." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 397 (1988). The court must therefore apply the "canon of constitutional avoidance," under which "[t]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Gonzales*, 550 U.S. at 153.

"[Where] an otherwise acceptable construction of a statute would raise serious constitutional problems, the [court] will construe the statute to avoid such problems . . . . The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr.*

*Trades Council*, 485 U.S. 568, 575 (1988) (internal citations and quotation marks omitted). The court must interpret the Inspection Act with "the most reasonable reading and understanding of its terms" to be constitutional, if at all possible. *See Gonzales,* 550 U.S. at 154.

Courts employ two mechanisms to preserve unconstitutional statutes from wholesale invalidation. First, if a statute is readily susceptible to a narrowing construction that will remedy the constitutional infirmity, the statute will be upheld. *See Citizens for Responsible Gov't State PAC v. Davidson*, 236 F.3d 1174, 1194 (10th Cir. 2000). If the language is not readily susceptible to a narrowing construction, but the unconstitutional language is severable from the remainder of the statute, that which is constitutional may stand while that which is unconstitutional will be rejected. *See id.*

"In order to determine whether partial invalidation of a state statute is appropriate, federal courts look to state law." *Id.* at 1195. "Under Utah law, when reviewing the construction of statutes, the general rule is that statutes, where possible, are to be construed so as to sustain their constitutionality. Accordingly, if a portion of the statute might be saved by severing the part that is unconstitutional, such should be done." *J.R. v. State of Utah*, 261 F. Supp. 2d 1268, 1295 (D. Utah 2003) (quoting *Lopes,* 1999 UT 24 at P18) (internal quotation marks omitted). Because Plaintiffs are making a facial challenge to the Inspection Act, they must show that no set of circumstances exists under which the Act would be valid. *See Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 514 (1990).

### a. Warrantless Searches, Consent and Notice

Here, Plaintiffs make a facial challenge, alleging that the Inspection Act unconstitutionally authorizes warrantless searches and seizures of their apiaries and that it fails

to require reasonable notice of inspection and fails to allow a beekeeper or property owner to consent to inspection. *See* Second Am. Compl. at 17, ¶ 79. As the court discussed at oral argument and now holds, a fair reading of the Act requires that the court infer that the bee inspector cannot inspect apiaries or hives without consent of the owners and that the Act does not authorize a warrantless search.

Section 4-11-10 of the Act states the "department and all county bee inspectors shall have access to all apiaries or places where bees, hives, and appliances are kept for the purpose of enforcing this chapter." If this were the entirety of the section, the Plaintiffs' argument may have more credence. The section continues, however, that "[if] admittance is refused, the department, or the county bee inspector involved, may proceed immediately to obtain an ex parte warrant from the nearest court of competent jurisdiction to allow entry upon the premises for the purpose of making an inspection." This language requires that a warrant must be obtained to search and to do an inspection if the apiary or property owner refuses the department or bee inspector admittance. The language requiring a warrant "if admittance is refused" implies that the bee inspector must first request admittance. Reading the section as a whole and applying the principle of constitutional avoidance, the reasonable constitutional inference is that no inspection is allowed without consent. Absent consent, the inspector must obtain a warrant.

At oral argument, Plaintiffs argued that the Inspection Act does not require a warrant, comparing the Act's language to that of an Ohio statute, which the court ruled unconstitutional in *Allinder v. Ohio*, 808 F.2d 1180 (6th Cir. 1987). Plaintiffs ask the court to follow the reasoning of *Allinder* and strike down the Utah Act. The language of the Ohio Act, however, is distinguishable. The Ohio statute states that "the director of agriculture or his authorized

representative shall have access to and egress from any apiary or to any premises, buildings, or any other place, public or private, in which he has reason to believe that bees, honey, wax, used hives, or used appliances are kept" in order to enforce the related sections. *Allinder*, 808 F.2d at 1182 n.1 (quoting *Ohio Revised Code § 909.05*). The Ohio statute continues, "[n]o person shall resist or hinder the director or his authorized representative in the discharge of their duties under such sections," and adds, "[n]o occupied dwelling may be entered without a search warrant." *Id.*

Thus, the Ohio statute only restricts state authorities from conducting warrantless searches and inspections if the search involves an "occupied dwelling." If the dwelling is unoccupied, no warrant is needed, and if the search is to be done upon any other type of building or beekeeping appliances or apiaries, no warrant is needed. The Utah Act, by comparison, limits state authorities by requiring them to obtain a warrant whenever beekeepers, hive owners, or property owners refuse admittance. This distinction saves the Utah Act.

Moreover, the differences between Utah's statute and Ohio's statute are significant because the Ohio statute, unlike the Utah Act, declares that no person shall resist or hinder the state authority in the discharge of their duties in addition to giving the state authority access to and egress from any apiary or other buildings, whether public or private, that might contain beekeeping-related equipment or products, even if apiaries were manipulated and opened in these areas. The only limitation the Ohio statute placed on the state authorities was that a warrant was required to search an occupied dwelling.

Plaintiffs further contend that Martin has made statements to associates that the Inspection Act authorizes him to inspect anyone's hives, day or night, without notice and that he can burn their hives without permission or a warrant. Martin's private interpretation of the Act,

however, carries no legal significance. It is the court's responsibility to construe the Act and it must uphold its constitutionality if a reasonable reading of the language will allow it to do so. Here a reasonable reading of the Act not only allows a conclusion that either consent or a warrant is required, but the reasonable inferences allow only that conclusion.

The court thus GRANTS IN PART Plaintiffs' Motion for Partial Summary Judgment to the extent that it declares that the Inspection Act does not allow warrantless inspections. The court DENIES IN PART Plaintiffs' Motion for Partial Summary Judgment on all other issues relating to the Inspection Act's constitutionality as discussed below.

**b.  Due Process and Vagueness**

Plaintiffs also challenge the Inspection Act arguing that it is unconstitutionally vague because it does not provide any limitation on when inspections can occur. Defendants respond that this case does not involve a warrantless search. Rather, the bee inspector in this case inspected hives in an open area. The landowner observed and did not object. Moreover, even if the inspector was to ask to inspect the hives at midnight and the property owner consents, there would be no constitutional violation. The requirement for consent resolves any constitutional concerns.

Plaintiffs argue further that when the bee inspector seeks to obtain a warrant after being refused access, the Inspection Act fails constitutionally because it has no limitations on when the inspector can execute the warrant, and it gives no guidance to the issuing court as to temporal limitations that can be imposed. Plaintiffs also argue that this concern affects the enforcement of the entire Act, including many of the actions the bee inspectors take, such as licensing, and importing and exporting bees in and out of the State. Plaintiffs thus argue that the Act authorizes

a bee inspector to access an owner's property at any time for multiple unnecessary reasons such as simply reviewing licensing-related paperwork. Plaintiffs' argument fails, however, for the very reason that in every warrant situation, the issuing magistrate can and does assess the reasonableness of the request and conditions for executing the warrant. The Act, therefore, does not fail on this ground for vagueness.

Plaintiffs further argue that the Inspection Act is unconstitutionally vague because Section 4-11-7 does not provide for an appeal procedure other than that a beekeeper can appeal to the Department of Agriculture when a bee inspector has made a determination that bees are diseased and decided what type of treatment should be undertaken. Plaintiffs argue that the statute does not give guidance on how the options to treat diseased bees are to be implemented, whether it is the bee inspector or the Department making the determination of what should be done with the bees. They argue that this failure gives the bee inspectors and the Department of Agriculture unfettered discretion. Plaintiffs thus assert that the bee inspector then has the ability to arbitrarily and selectively discriminate against beekeepers with whom he commercially competes or against whom he has some animosity or vendetta.

Section 4-11-7(4)(a) provides that the "owner of an apiary who is dissatisfied with the diagnosis or course of action proposed by an inspector under this section may, at the owner's expense, have the department examine the alleged diseased bees." This provision adequately provides an appeal. Moreover, the section must be construed to allow a reasonable time after the decision is made for the owner to seek an appeal or review by the Department to examine the alleged diseased bees. Otherwise the provision for review by the Department would be meaningless.

Plaintiffs additionally argue that Section 4-11-6 is unconstitutional because it provides that a beekeeper with infected or diseased bees shall not "sell, barter, give away, or move the bees, colonies, or apiary equipment without the consent of the county bee inspector or the department." This challenge also fails. It is a reasonable exercise of authority by the legislature to vest in the inspector the authority to oversee the procedures to address infected or diseased bees. The risk of infecting the bee population of the county may be so severe that the bee inspector is required to act promptly and in his or her best judgment to eradicate the problem. On the face of the Act, there is no basis to find it constitutionally defective on this ground. Moreover, when Section 4-11-6 is read together with the remedies provided in Section 4-11-7(4), the owner is not without the possibility of review of the decision.

Plaintiffs essentially argue that the Inspection Act was not well-drafted. Apparently, the Plaintiffs would have the court declare the Act unconstitutional to force the legislature to draft an act more to their liking. It is not the court's place to tell the legislature what should be included in the statute. It is the legislature's right and responsibility to set the policy for the State. Because the Inspection Act can be read to satisfy the constitutional requirements, the court must do so.

## II. DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### A.     Relevant Facts

Plaintiffs allege in their Fifth Claim for Relief that the Counties "have arbitrarily and unreasonably favored Martin to the exclusion and detriment of all other commercial beekeepers in both Counties" by appointing Martin as county bee inspector. Second Am. Compl. 25, ¶ 139 (Dkt. No. 61). Plaintiffs assert that these actions by the Counties have violated the Equal Protection Clause of the Fourteenth Amendment which "prohibits a state and its political

subdivisions from arbitrarily and unreasonably conferring benefits and advantages to one member of a class that are not provided to similarly situated members of the same class, and from intentional and arbitrary discrimination against an individual." *Id.* at ¶ 138. Plaintiffs argue that Martin's appointment as bee inspector "confers a demonstrable and competitive advantage on [him] because [he] has been given access to the proprietary information of [Darren] and other beekeepers in [the Counties]."[1] *Id.* at 26, ¶ 140. Plaintiffs claim that Martin can use this information for his own personal economic benefit. *See id.*

Plaintiffs also argue that, on the other hand, Darren "does not have a right to view the proprietary information of other beekeepers" and that Darren "cannot access or use the same information" for his personal economic benefit that is available to Martin due to his position as county bee inspector. *See id.* at ¶ 141. Plaintiffs further contend that "all commercial beekeepers except [Martin] are subject to the oversight and regulation of a third-party bee inspector," and that conversely, Martin is "not subject to the same third-party regulation" and is actually unregulated by either of the Counties because the only regulator is Martin himself. *See id.* at ¶¶ 142-43. Plaintiffs thus allege that Martin has "subjected [Darren] to unlawful searches and seizures, made unfounded criminal allegations against him, misappropriated his trade secrets, interfered with his contractual relations, and trespassed on his property, which acts constitute intentional and arbitrary discrimination against [Darren] in violation of his equal protection rights, thereby giving rise to a 'class-of-one' equal protection claim." *Id.* at ¶ 149.

---

[1] Plaintiffs have failed to disclose any particular proprietary information that they claim Martin has discovered that would not be known or reasonably discoverable by others skilled in the art of beekeeping.

**B.     Legal Standard**

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard that governs a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003).

When evaluating a motion to dismiss under Rule 12(b)(6), the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996). To withstand such a motion to dismiss, "a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court "has explained that two working principles underlie this standard." *Id.*

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Thus, mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim. In other words, a plaintiff must offer sufficient factual allegations to raise a right to relief above the speculative level. Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the [] court to draw on its judicial experience and common sense. Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable.

*Kansas Penn Gaming*, 656 F.3d at 1214 (internal citations and quotation marks omitted); *see also Twombly*, 550 U.S. at 555, 570; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

The Tenth Circuit has stated that this pleading requirement serves two purposes: "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense," and "to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of 'a largely groundless claim.'" *Kansas Penn Gaming*, 656 F.3d at 1215 (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008) (Gorusch, J., concurring) (quoting *Twombly*, 550 U.S. at 557)). The Supreme Court directs that "the plausibility standard" seeks something more than "a sheer possibility of unlawful conduct," explaining:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Kansas Penn Gaming*, 656 F.3d at 1215 (quoting *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted)).

Applying this standard, the Tenth Circuit instructs that "plausibility" refers to "the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* at 1215 (quoting *Robbins v. Okla. Ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id.*; *see, e.g., Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009); *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010). To prevail in this action, therefore, Plaintiffs "must offer

enough specific factual allegations to 'nudge their claims across the line from conceivable to plausible.'" *Kansas Penn Gaming*, 656 F.3d at 1219 (quoting *Twombly*, 550 U.S. at 570).

Additionally, in circumstances such as those presented here, where Plaintiffs' claim is against Martin as an individual government actor as well as against Elmer, the Counties, and others, "[it] is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* (quoting *Robbins*, 519 F.3d at 1250). The court now evaluates Plaintiffs' Fifth Claim for Relief involving a class-of-one Equal Protection violation under this legal standard.

C.     **Discussion**

a.     <u>**Class-of-One Equal Protection**</u>

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny "any person within its jurisdiction the equal protection of the laws." "Equal protection jurisprudence has traditionally been concerned with governmental action that disproportionally burdens certain classes of citizens." *Id.* at 1216-17. Plaintiffs do not allege that they are a member of a particular class, but rather seek to proceed on the class-of-one theory that has been recognized by the Supreme Court as an Equal Protection claim brought by a single plaintiff "where the plaintiff alleges that [he or she] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

"The paradigmatic 'class of one' case, sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive

(improper because unrelated to his public duties), comes down hard on a hapless private citizen."

*Kansas Penn Gaming,* 656 F.3d at 1216 (quoting *Lauth v.* McCollum, 424 F.3d 631, 633 (7th

Cir. 2005)). The Tenth Circuit has held that to prevail on a class-of-one Equal Protection claim:

> A plaintiff must first establish that others similarly situated in every material respect were treated differently. A plaintiff must then show this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity. This standard is objective – if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations.

*Id.* (internal citations and quotation marks omitted).

The Tenth Circuit "[has] approached class-of-one claims with caution, wary of turning

even quotidian exercises of government discretion into constitutional causes." *Id.* (quoting

*Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1209 (10th Cir. 2006) (internal

quotation marks omitted)). In *Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004), the

court discussed some of the risks that a class-of-one claim can pose to ordinary government

decision-making. Included among the risks discussed was the concern that this type of claim

"could effectively provide a federal cause of action for review of almost every executive and

administrative decision made by state actors." *Id.* at 1210-11. The *Kansas Penn Gaming* court

added that these concerns "are magnified with challenges to low-level government

decision-making, which often involves a great deal of discretion." 656 F.3d at 1216.

"Relying in part on these concerns," the Tenth Circuit recognizes a "substantial burden"

that plaintiffs "demonstrate others 'similarly situated in all material respects' were treated

differently and that there is no objectively reasonable basis for the defendant's action." *Id.* at

1217 (quoting *Jicarilla*, 440 F.3d at 1212). "The requirement that a plaintiff show that similarly

situated persons were treated differently is especially important in class-of-one cases." *Jicarilla*,

440 F.3d at 1212; *see also Jennings*, 383 F.3d at 1214 ("It is imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class"). Cursory and conclusory allegations that others are similarly situated are inadequate to support any class-of-one claim. *See Kansas Penn Gaming*¸ 656 F.3d at 1220.

The *Kansas Penn Gaming* decision refers to several other-circuit cases to illustrate that this understanding of class-of-one claims "is consistent with the practice of other circuits" throughout the country. *See* 656 F.3d at 1218; s*ee, e.g., Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 143 (2d Cir. 2010) ("[P]laintiff [must] show that no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy."); *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) ("This requirement demands more than lip service. It is meant to be a very significant burden."); *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (requiring a class-of-one plaintiff to demonstrate that the comparable properties were "*prima facie* identical in all relevant respects.").

The strict reading of this element is emphasized by the Tenth Circuit because "it addresses the main concern with the class-of-one theory – that it will create a flood of claims in that area of government action where discretion is high and variation is common." *Kansas Penn Gaming*, 656 F.3d at 1218. "This is because the requirement that comparators be 'similarly situated in *all material respects*' is inevitably more demanding where a difference in treatment could legitimately be based on a number of different factors." *Id*. "A broader application 'could subject nearly all state regulatory decisions to constitutional review in federal court and deny

state regulators the critical discretion they need to effectively perform their duties.'" *Id.* (quoting *Leib v. Hillsborough County Pub. Transp. Comm'n,* 558 F.3d 1301, 1307 (11th Cir. 2009).

### b. Differential Treatment Compared to Similarly Situated Beekeepers

Here, Plaintiffs have alleged a class-of-one Equal Protection violation but have failed to provide "a specific and detailed account of the nature of the preferred treatment of the favored class" of all other commercial beekeepers in the Counties, which is necessary to support this class-of-one claim. *Jennings*, 383 F.3d at 1214. Thus, Plaintiffs have not satisfied their pleading burden in this case. Plaintiffs allege that by appointing Martin as county bee inspector, the Counties have arbitrarily and unreasonably favored Martin to the exclusion and detriment of all other commercial beekeepers in the Counties. The court agrees with Defendants that this portion of Plaintiffs' claim appears to be an invented reverse class-of-one claim because Plaintiffs allege, in essence, that Martin is the class-of-one. No such type of claim exists.

Plaintiffs additionally allege that they are a class of one because they are not inspected by the county bee inspector and may be required to pay a fee to have the Utah Department of Agriculture perform an inspection while the other commercial beekeepers in the Counties whom Martin inspects do not pay a fee. It is important to note that, upon Plaintiffs' own request, Martin does not inspect Plaintiffs because he is a competitor and the State agreed to inspect Plaintiffs' apiaries free of cost. Additionally, all beekeepers in the Counties have the option available to them to have the State, rather than Martin, inspect their hives. Thus, this argument in relation to Plaintiffs' class-of-one claim fails because Plaintiffs have not been treated differently than other commercial beekeepers in the Counties in this respect.

Plaintiffs also argue that Martin has treated them disparately and differently than he has treated other commercial beekeepers in the Counties by subjecting them to "unlawful searches and seizures," making "unfounded criminal allegations against them," misappropriating their trade secrets, interfering with their contractual relations, and trespassing on their property. *See* Second Am. Compl. at 27, ¶ 149 (Dkt. No. 61). Plaintiffs claim that Martin's actions constitute intentional and arbitrary discrimination against them in violation of Darren's Equal Protection rights which gives rise to their class-of-one claim. These allegations are not supported by factual content and are merely formulaic recitations of the elements of a cause of action and naked conclusions of law devoid of factual enhancement. Plaintiffs cannot prevail by pleading conclusions; under *Twombly* and *Iqbal*, these pleadings are insufficient and are not entitled to a presumption of truth. *See SEC v. Shields*, 2014 U.S. App. LEXIS 3369, **12-16 (10th Cir. Feb. 24, 2014); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).

To succeed on their claim here, Plaintiffs are required to meet both elements of a class-of-one claim. First, Plaintiffs must "establish that others similarly situated in every material respect were treated differently." *Kansas Penn Gaming*, 656 F.3d at 1216. Here, Plaintiffs have described how Martin was treated differently and given certain advantages that all the other commercial beekeepers, including Darren, were not given. Martin cannot be the class-of-one for this action. At oral argument and in their briefing, Plaintiffs state that it was implied that Darren was the "one" commercial beekeeper out of all the other commercial beekeepers in the Counties who Martin singled out and that Darren suffered disparate and differential treatment at Martin's hands. Plaintiffs allege that this different and disparate treatment was a result of Martin's animosity toward Darren. Darren thus claims that it was implied that he was a class-of-one

among all the commercial beekeepers in the Counties because Martin treated him differently than any of them.

The court has carefully considered this argument and has thoroughly reviewed applicable case law, most particularly the *Kansas Penn Gaming* case from this Circuit, which the court closely follows. After doing so, the court finds that Plaintiffs do not provide a sufficiently specific and detailed factual account showing how Darren was treated differently than all the other commercial beekeepers in the Counties and how those other beekeepers are similarly situated to Darren. To prevail on this claim, Plaintiffs are required to provide specific facts and details about how Martin favorably treated other commercial beekeepers in the Counties in addition to how Martin allegedly disparately treated Darren to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Moreover, Plaintiffs have failed to allege, as they must, the identity or characteristics of other similarly situated beekeepers and how those similarly situated beekeepers were treated differently. Plaintiffs have offered only conclusory allegations that other commercial beekeepers in the Counties are similarly situated.

The court also notes that, in light of the fact that Darren requested that Martin not inspect his apiaries, Plaintiffs' pleading that Darren was treated differently than other beekeepers because Darren's apiaries are not inspected by Martin but are inspected by the State instead, and because Martin inspects all of the other commercial beekeepers' apiaries in the Counties, does more to support an inference that the other beekeepers in the Counties are *not* similarly situated to Darren. The court also emphasizes that this occurred by Darren's own volition and it was not forced upon him. Because Darren separated himself from the other beekeepers in the Counties by

requesting that Martin not inspect his apiaries, this cannot be viewed as discrimination by Martin and the Counties against him.

Plaintiffs only alleged that Martin inspected Darren's apiaries and that Martin did not inspect apiaries of all of the other beekeepers in the Counties the same as he inspected Darren's. Plaintiffs did not offer any further specific or more detailed evidence to support this allegation besides other statements about Martin being given special advantages as a result of his appointment as county bee inspector. What Plaintiffs proffered as facts the court views as mere conclusions couched as facts. The court is not required to accept conclusory allegations as true. Moreover, cursory and conclusory allegations that others are similarly situated are inadequate to support any class-of-one claim. *See Kansas Penn Gaming¸* 656 F.3d at 1220. Because Plaintiffs have not met the substantial burden of establishing that Darren was treated differently than the other commercial beekeepers in the Counties and that those beekeepers are similarly situated to him, Plaintiffs have not met the first element of a class-of-one claim and their claim fails.

c.      **Difference in Treatment without Rational Basis; Reasonable Justification**

Even if Plaintiffs had been able to establish that Darren was treated differently than other similarly situated beekeepers, Plaintiffs would have also been required to show that "this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity." *Id.* at 1220. This standard is objective; if the court finds there is a reasonable justification for the challenged action, it does not inquire into the government actor's actual motivations. *See id.* Thus, if the court finds that Martin had a reasonable justification for inspecting Darren's apiary, then it need not inquire into Martin's actual motivations for doing so. From the briefing and oral argument the court is

satisfied that Martin's explanation provided a reasonable justification for checking Darren's apiary on Milton Williams' land. Martin explained that he stopped at Williams' property when he saw the apiary in the open field because he knew that pesticides were going to be sprayed in the area soon and he wanted to warn the owner so the bees could be protected from the spray.

The court also concludes that Martin's explanations provided sufficient support that his actions were neither irrational nor abusive, and that they were related to a legitimate state activity. As county bee inspector, Martin has a responsibility to help beekeepers in the Counties with their beekeeping and to protect bees in the area from potential harm. Checking an apiary to warn the owner of upcoming pesticide sprays that could potentially harm the bees in the apiary certainly qualifies as a legitimate state activity for a county bee inspector. Because Martin had a reasonable justification for checking Darren's apiary on Williams' land, the court finds that he acted with a rational basis, and in light of the objective standard required here, the court need not inquire into Martin's actual motivations, whether they included an animus toward Darren or not.

The court does not believe it can be inferred that every reasonable bee inspector would be acting with animus under these circumstances. Moreover, there were no facts pled that Darren was singled out due to animosity. Thus, Plaintiffs have not met the burden required to prove this second element of a class-of-one action either, and because they have failed to meet both elements, Plaintiffs' class-of-one Equal Protection claim fails.

Construing Plaintiffs' pleadings in the light most favorable to them as it must, the court finds that there is not enough of a specific and detailed account of factual evidence presented here to meet Plaintiffs' burden of proof to defeat Defendants' motion. Moreover, the court finds that Plaintiffs have not met the "plausibility standard" required here to "nudge their claims

across the line from conceivable to plausible." *See, e.g., Iqbal*, 129 S. Ct. at 1949; *Robbins,* 519 F.3d at 1247. Plaintiffs' allegations are "precisely the sort of 'naked assertions devoid of further factual enhancement' that *Iqbal* instructs us to disregard." *Kansas Penn Gaming*, 656 F.3d at 1221 (quoting *Iqbal*, 129 S. Ct. at 1949).

Therefore, Plaintiffs have failed to state a class-of-one Equal Protection claim under the standard set forth in *Twombly* and *Iqbal.*

## CONCLUSION

The court GRANTS IN PART Plaintiffs' Motion for Partial Summary Judgment to the extent that it declares that the Inspection Act requires either consent or a warrant to inspect beehives and apiaries. No warrantless inspections are permissible under the Act. The court DENIES IN PART Plaintiffs' Motion for Partial Summary Judgment on all other issues challenging the constitutionality of the Inspection Act.

The court GRANTS Defendants' Motion for Judgment on the Pleadings and DISMISSES Plaintiffs' Fifth Claim for Relief.

DATED this 28th day of April, 2014.

BY THE COURT

Clark Waddoups
United States District Judge