# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DARREN E. COX, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CACHE COUNTY, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:08-cv-124 CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Defendants Cache and Box Elder Counties (the "Counties") moved for partial summary judgment on the Third and Fourth Claims for Relief on April 24, 2014. (Dkt. No. 177). This motion is now before the court. In his Third and Fourth Claims, Plaintiff Darren Cox ("Darren") alleges procedural and substantive due process violations against the Counties. Second Am. Compl. at 21-25 (Dkt. No. 61). Plaintiff elected not to respond to Defendants' Motion and Defendants did not request oral argument. After carefully reviewing Plaintiff's filings and relevant legal authorities, the court GRANTS Defendants' Motion for Partial Summary Judgment on both claims.

## FACTUAL BACKGROUND

The motion at issue arises out of an action that Plaintiffs Darren Cox and Cox Honey of Utah, L.L.C. ("Cox Honey") brought against Defendants following Martin James' appointment on March 14, and April 3, 2007 as county bee inspector respectively for both Cache and Box Elder Counties. Darren was a licensed commercial beekeeper until May 7, 2008 when he formed

Cox Honey. Since May 2008, Darren has operated only through Cox Honey and is not currently licensed by the State of Utah as a commercial beekeeper. Martin, also a commercial beekeeper, owns and operates Slide Ridge Honey with his father Elmer James. Second Am. Compl. at 2, ¶¶ 5-6 (Dkt. No. 61). Darren alleges that Martin is a direct competitor. See *id.* at 6-7, ¶¶ 26-29. Because Martin is a competitor, Darren informed the Counties that he objected to allowing Martin to inspect his apiaries. *See id.* at 11, ¶ 47. Darren asserts that the location of his apiaries and his beekeeping techniques are valuable proprietary information that he has a right to keep secret from competitors. *See id.* at 4-6, ¶¶ 18-25.

Darren further alleges that the Counties and Darren agreed that Darren's apiaries would be inspected by the Utah Department of Agriculture rather than by Martin to allow Darren to protect his alleged proprietary information. *See id.* at 11, ¶¶ 46-48. Darren was nevertheless required to provide information to the Counties about the location of his apiaries to protect the apiaries from being sprayed by county or private pesticide applicators. *See id.* at 12, ¶ 50. Darren alleges that this information was made available to Martin who is now aware of the locations of his apiaries. *See id.*

Darren further alleges that in May 2007 Martin was observed inspecting one of his apiaries without any notice to Darren or a warrant, and that there is evidence that Martin inspected other apiaries belonging to Darren at later times. *See id.* at 12-13, ¶¶ 51-54. Martin responds that he was checking the hive to see who it belonged to so that he could warn the owner about impending pesticide spraying in the area and to help ensure that the bees were unharmed. He claims he was carrying out his responsibilities as bee inspector. Martin denies that he opened or manipulated the hive. According to Darren, Martin has discovered the location of each of his

bee yards and has discovered his proprietary beekeeping techniques through his official inspections. *See id.* at 13-14, ¶¶ 60-64. Darren alleges that Martin has used this information to improve his commercial beekeeping business to the unfair detriment of Darren and other commercial beekeepers in the Counties. *See id.*

**Facts Relevant to Third and Fourth Claims**

In both the Third and Fourth Claims for Relief, Darren alleges that as a result of appointing Martin James as county bee inspector, the Counties deprived him of due process rights in the proprietary and confidential information related to his beekeeping business. *See* Second Am. Compl. at 21-25 (Dkt. No. 61). Darren's father, Duane Cox, was the county bee inspector for almost three decades when Darren went to Mark Ashcroft, a representative of the Utah Department of Agriculture, and said that his father Duane should be replaced as bee inspector because he was not doing an adequate job. Df.'s Mot. Part. Sum. J. at 5 (Dkt. No. 177).

The Counties asked Darren to apply for the position, but he refused. *Id.* Instead, Darren recommended that his brother, Bryan Cox, apply for the position because Darren believed Bryan would be "neutral" even though he was also a commercial beekeeper. *Id.* There were only two applicants for the job: Bryan Cox and Martin James. *Id.* The Counties did not choose Bryan Cox for the job, but rather decided to hire Martin James as county bee inspector. *Id.* at 5-6. Bryan stated that he "blew" the job interview with the selection committee by "laughing" when he was told that the new inspector would be required to do yearly inspections of local beehives. *Id.* Cache County hired Martin as its bee inspector on March 14, 2007 and Box Elder County hired him as its inspector on April 3, 2007. *Id.* at 6.

Darren seeks an order from the court declaring that Martin's appointment as county bee

inspector and his alleged actions violate Darren's right to procedural and substantive due process. Second Am. Compl. at 51-52 (Dkt. No. 61). Darren also asks the court to order that Martin be removed from his position as county bee inspector immediately and award judgment for Darren's general, compensatory and consequential damages, the exact amount to be proven at trial, together with interest, attorneys' fees under 42 U.S.C. § 1988, and costs incurred in this action as provided by law. *Id.* at 52. Cox Honey does not assert any claims under the Third and Fourth Claims for Relief. Darren's claims are limited to any injury that occurred, if at all, between Martin's appointment on March 14, or April 3, 2007 and May 7, 2008 when Darren ceased being a licensed beekeeper. Darren is without standing to challenge Martin's continuing appointment after that date.

## ANALYSIS

### I. MOTION FOR PARTIAL SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000). In determining whether a genuine issue of material fact exists, we view the evidence in the light most favorable to the non-moving party. *Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1128 (10th Cir. 2001).

## II. PROCEDURAL DUE PROCESS

### a. **Plaintiff's Allegations**

In the Third Claim, Darren alleges procedural due process violations against the Counties. Darren states that "[t]he procedural component of the Due Process Clause of the Fourteenth Amendment ensures that a state and its political subdivisions will not deprive an individual of a property interest without affording the individual appropriate procedural protection." Second Am. Compl. at 21, ¶ 109 (Dkt. No. 61). Darren alleges that he had a property interest in his proprietary beekeeping techniques and that it is subject to due process protection. *Id.* at 21, ¶ 110. Darren claims that by appointing Martin as county bee inspector, the Counties deprived him of this property right without due process of law. *Id.* at 21, ¶ 111. Darren posits that this deprivation occurred because the proprietary beekeeping techniques were made available to and acquired by Martin. *Id.* at 22, ¶ 112.

Darren alleges that as soon as Martin was given a list of his apiary locations, he was deprived of the value of his proprietary beekeeping techniques by having valuable information about "the best and most commercially productive apiary locations, which were developed over years of trial and error and hard work," made available to Martin. *Id.* at 22, ¶ 113. Additionally, Darren claims that as soon as Martin entered his property and inspected his apiaries, he was deprived of the value of his proprietary beekeeping techniques by having his beekeeping practices disclosed to a direct competitor. *Id.* at 22, ¶ 114.

Darren argues that because the deprivation of his property interest occurred simultaneously with the disclosure of his apiary locations and Martin's inspections of his apiaries, there was no process afforded by the Counties in connection with this deprivation. *Id.* at

22, ¶ 115. By appointing a direct competitor as county bee inspector and "clothing that direct competitor with the power and authority of county office," it became impossible, Darren argues, for the inspector to perform his duties without depriving him of his property interest. *Id.* at 22, ¶ 116. Darren claims that the Counties have been deliberately indifferent to the recurring constitutional deprivations that have occurred as a result of Martin's appointment as bee inspector and that the Counties' violations of Darren's procedural due process rights are actionable under 42 U.S.C. § 1983. *Id.* at 23, ¶¶ 121-22.

   b. **Applicable Law**

"Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision." *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1254 (10th Cir. 2005) (quotations and citation omitted). To "assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (quotation marks and citation omitted); *see also Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006); *Copelin-Brown*, 399 F.3d at 1248.

When examining the second question, courts focus on "whether the level of process afforded to the [plaintiff] passed constitutional muster, not whether [the local government] followed statutes or regulations." *Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007). In other words, "a failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself

6

falls short of standards derived from the Due Process Clause." *Id.* (quotation marks, citations, and alteration omitted).

### c. Discussion

Even if Darren were to meet the first element of a denial of procedural due process claim and show that his proprietary business techniques qualify as a property interest that procedural due process protection applies to, the court need not address that element because Darren has not met the second prong of such a claim. Darren has not offered any facts to show that he has been denied due process by the Counties. Darren fully participated in the entire process that led to the Counties' appointment of Martin.

Darren, in fact, was the very person who first contacted Mark Ashcroft with the Utah Department of Agriculture reporting the need to find a new county bee inspector. Darren told Mr. Ashcroft that his father, Duane Cox, was no longer able to adequately fulfill the job and that another bee inspector should be appointed by the Counties. When the Counties asked Darren to apply for the job, Darren refused and supported the application of his brother, Bryan Cox. Bryan and Martin then both participated in the same interviews with the Counties and the Counties ultimately chose and appointed Martin. The court finds no denial of procedural due process in the manner in which the Counties went about making that decision.

The Counties made a reasonable decision to hire Martin over Bryan Cox, especially in light of the fact that Bryan laughed when the selection committee informed him that they expected the new bee inspector to perform yearly inspections of every beekeeper's apiaries. Bryan himself stated that he "blew" the job interview. Even after Martin was appointed, the Counties heard Darren's objections to Martin's appointment and Martin and the Counties acted

7

upon those objections by restricting Martin from inspecting Darren's apiaries and hives. The Counties then, at the insistence of Martin himself, included a provision in Martin's contracts that he would not inspect Darren's apiaries.

The court finds that Darren was afforded an appropriate level of process in the hiring of Martin James as county bee inspector. The Counties' actions in hiring Martin James as county bee inspector pass constitutional muster and do not fall short of the standards derived from the Due Process Clause. Therefore, the Counties did not deny Darren procedural due process in the appointment of Martin James as county bee inspector. The court GRANTS Defendants' Motion for Partial Summary Judgment as to Darren's Third Claim for Relief and the claim is DISMISSED with prejudice.

### III. SUBSTANTIVE DUE PROCESS

#### a. <u>Plaintiff's Allegations</u>

In the Fourth Claim for Relief, Darren alleges substantive due process violations against the Counties. Darren alleges that "[t]he substantive component of the Due Process Clause of the Fourteenth Amendment ensures that a state and its political subdivisions will not arbitrarily and unfairly act to deprive an individual of property or otherwise exercise power without a reasonable justification in the service of a legitimate government objective." Second Am. Compl. at 23-24, ¶ 125 (Dkt. No. 61). Darren alleges that by appointing Martin as county bee inspector, the Counties arbitrarily and unfairly deprived him of his property interest in his proprietary beekeeping techniques. *Id.* at 24, ¶126. Darren asserts that the effect of appointing Martin, a direct competitor, to inspect and supervise his beekeeping activities is to directly transfer the proprietary beekeeping techniques from Darren to Martin. *Id.* at 24, ¶ 127. Darren claims that by

appointing Martin as bee inspector, the Counties have placed Darren in a position where he must choose between obtaining Martin's consent to sell, barter, give away, or move any bees, colonies, or appliances that are diseased or have been exposed to disease, or violating the Utah Bee Inspection Act. *Id.* at 24, ¶ 128.

Allowing Martin to "act under color of state law to inspect and supervise Darren's beekeeping operations," Darren asserts, "deprives Darren of his fundamental right to an impartial decision maker and permits Martin to take official action in his governmental capacity in which he has a direct, personal, substantial, and pecuniary interest." *Id.* at 24, ¶ 131. Darren claims that the Counties have been deliberately indifferent to the recurring constitutional deprivations that have occurred as a result of Martin's appointment as county bee inspector and that the Counties' violations of Darren's substantive due process rights are actionable under 42 U.S.C. § 1983. *Id.* at 25, ¶¶ 134-35.

### b. Applicable Law

A substantive due process claim requires assessing whether a governmental action is arbitrary, irrational, or shocking to the conscience of a federal judge. *Camuglia*, 448 F.3d at 1222-23; *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.,* 341 F.3d 1197, 1200-01 (10th Cir. 2003); *see also Darr v. Town of Telluride*, 495 F.3d 1243, 1257 (10th Cir. 2007). The arbitrary deprivation of a property right may violate substantive due process only if the arbitrariness is extreme. *Camuglia*, 448 F.3d at 1222. "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* at 1222-23. An act is said to be arbitrary and capricious when it is done for reasons that are trivial or wholly unsupported by a basis in fact. *Smith v. Town of Eaton*, 910 F.2d 1469, 1472 (7th

9

Cir. 1990). Further, in order to constitute a violation of substantive due process, a government official's conduct "must generally be intended to inflict harm to be conscience shocking in the constitutional sense." *Herts v. Smith*, 345 F.3d 581, 587 (8th Cir. 2003). Significantly, "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350 (1976).

    c. **<u>Discussion</u>**

The Counties, in appointing Martin James as bee inspector, did not act in a manner that was arbitrary, capricious, or shocking to the conscience because they applied the same interview process to both job applicants, Bryan Cox and Martin James. Both applicants were commercial beekeepers who naturally are direct competitors with other commercial beekeepers in the Counties. The Counties made a reasonable choice, based on their interviews of the two applicants and the facts available to them, in deciding to hire Martin as county bee inspector, especially in light of the fact that Bryan Cox laughed when the selection committee informed him that the new inspector would be required to do yearly inspections and refused to do the inspections as the Counties desired. Bryan himself said that he "blew" the interview. Based on the facts, the Counties made the best choice possible out of the only two candidates interviewed for the job.

Additionally, the position of county bee inspector requires an individual with significant knowledge about and experience with the raising and care of bees, including the ability to recognize and treat different diseases and parasites that can afflict bees. While it may not be the optimal situation, the bee inspector will naturally be a commercial beekeeper who is a competitor with other beekeepers in the Counties because usually it is only the commercial beekeepers that have this requisite knowledge, experience, and ability to perform the duties of county bee

inspector. The Counties included a provision in Martin's contracts that he would not inspect any of Plaintiffs' apiaries and Martin agreed not to do so.

Further, the reasons for the Counties' appointing of Martin as county bee inspector were not trivial or irrational and are supported by the facts. Darren has not provided any facts to support a claim that the Counties, in hiring Martin as county bee inspector, intended to inflict harm to Darren. Neither was there any outrageousness involved in the Counties' decision process and final choice to appoint Martin over Bryan Cox. The court finds that the Counties did not deny Darren of his substantive due process rights because the Counties' actions were not arbitrary or capricious, and were not of such a nature that would shock the conscience of a federal judge. Therefore, Defendants are entitled to summary judgment on Darren's Fourth Claim for Relief. Defendants' motion is GRANTED and the Fourth Claim for Relief is DISMISSED with prejudice.

## CONCLUSION

The court GRANTS Defendants' Motion for Partial Summary Judgment and DISMISSES Plaintiff Darren Cox's Third and Fourth Claims for Relief with prejudice.

DATED this 29th day of July, 2014.

BY THE COURT

_____
Clark Waddoups
United States District Judge